IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| ARTHUR L. ARMSTRONG,<br>Plaintiff, | § § § § | |
| v. | § § | Case No. _____ |
| DAVID L. RAYBIN, *Attorney at Law*,<br>Defendant. | § § § § § | |

---

CIVIL RIGHTS COMPLAINT FOR DAMAGES AGAINST THE DEFENDANTS
FOR CONSPIRING FOR THE PURPOSES OF DEPRIVING PLAINTIFF OF
RIGHTS SECURED BY THE CONSTITUTIONAL LAWS OF
THE STATE OF TENNESSEE AND THE UNITED STATES OF AMERICA

---

## Introduction

This is a civil rights action filed by Arthur L. Armstrong, a state prisoner for declaratory and injunctive relief under 42 U.S.C. § 1983, alleging that former state prosecutor David Louis Raybin acted with reckless disregard and callous indifference to preserving all physical evidence when he intentionally failed to return the 'rape kit' evidence that was essential and determinative of the outcome of the case in violation of the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution. The plaintiff also alleges the tort of willful and intentional negligence.

## Jurisdiction

1. The Court has jurisdiction of the action under 28 U.S.C. § 1331(1) and 1343 (a)(3).

This action arises under the Constitutions of the United States and Tennessee, under federal and state law, and under 42 U.S.C. § 1983. Mr. Armstrong seeks declaratory relief, and punitive damages, attorney's fees, expenses and costs, and such other relief that may be available to him.

2. The Court has supplemental jurisdiction over the plaintiff's state law tort claims under 28 U.S.C. § 1367.

*Venue*

3. Venue in this Court is proper under 28 U.S.C. § 1391, and this Court has personal jurisdiction over the defendant in this matter because the events giving rise to this claim occurred in this district and one or more of the defendants resides here.

*Parties*

4. The plaintiff, Arthur L. Armstrong is, and all times relevant to this litigation was, a citizen of the United States of America residing in Davidson County, Tennessee and currently a state prisoner incarcerated at Northwest Correctional Complex ("Northwest") located in Lake County, Tennessee.

5. At the time of the events described in this Complaint, defendant David L. Raybin was a licensed attorney employed at the Office of the Davidson County District Attorney General. The general responsibilities and duties of Raybin were to initiate and maintain criminal actions against accused defendants in the criminal courts of Davidson County, Tennessee. He had a duty to act with ordinary and reasonable care in accordance with the recognized standard of acceptable professional practice of the legal profession. Upon information and belief, the Office of the Davidson County District Attorney General no longer employs Rabin. He is sued in his official capacity to the extent his actions

were within the scope of his employment and in his individual capacity to the extent some or all of his conduct described herein fell outside the scope of the practices and policies of the Office of the Davidson County District Attorney General.

6. The defendant has acted, and continued to act, under color of state law at all times relevant to this complaint.

*Preliminary Statement*

7. Mr. Armstrong does not seek to attack the validity of his conviction. This is a case about accountability. It is axiomatic that, as long as there are criminal trials, prosecutors will be required to initiate and maintain criminal actions against accused defendants in the criminal courts. The prosecutor is "the 'servant of the law, the two-fold aim of which is that guilt shall not escape or innocence suffer." Moreover, prosecutors will need to recognize if evidence in his file is highly probative of innocence of the accused defendants and he should be presumed to recognize its significance even if he has actually overlooked it, lest the "special significance to the prosecutor's obligation to serve the cause of justice" be lost. The consequence obviously can place the liberty and lives of the accused in serious jeopardy.

*Facts*

8. On February 11-12, 1977 Miss Shellie Fisher was allegedly robbed and raped by two (2) or more assailants.

9. After Miss Fisher reported the kidnapping, rape and robbery to the Nashville Police Department. She was taken to a hospital, where a physician used a sexual assault kit to collect evidence. Upon information and belief, the kit included paper to collect saliva

samples, a tube for obtaining a blood sample, microscopic slides for making smears, a set of Q-tip-like swabs, and a medical examination report.

10. Mr. Armstrong is informed and believes, and based upon such information and belief, alleges that the police placed the kit in a secure property and evidence storage room of the Nashville Police Department.

11. Mr. Armstrong is informed and believes, and based upon such information and belief, alleges that in mid-May of 1978, defendant David L. Raybin, acting in his official capacity of assistant district attorney general went to the property and evidence storage room of the Nashville Police Department and took physical possession of the sexual assault kit used to collect evidence in the alleged sexual assault of Miss Fisher .

12. Upon information and belief, on 13 November 1977, some nine (9) months later the alleged victim Shellie Fisher returned to Nashville, Tennessee from her home in Dayton, Ohio and participated in a questionable and suggestive photo array, wherein she identified Mr. Armstrong as one of her assailants, immediately afterwards she signed arrest warrant for Mr. Armstrong.

13. On 04 June 1978, Mr. Armstrong, the plaintiff was arrested and subsequently charged with the kidnapping, rape and robbery of Miss Shelly O. Fisher.

14. Sixteen years later, Mr. Armstrong was compelled to conduct some remedial legal research after the court decision known as *Freeman v. Jeffcoat*, 1991 WL 165802 (Tenn.Ct.App.), was handed down and following prison scuttlebutt, leading many convicted felons to believe they could request disclosure and inspection their police files and related reports.

15. As a result, Mr. Armstrong sought and later received several reports from the Office of the Davidson County Criminal Court Clerk, which he had never been provided before , during or long after his criminal trial proceedings.

16. Upon reviewing this newly discovered evidence, Mr. Armstrong learned of the existence of a sexual assault kit, which had been used to collect evidence related to the sexual assault of Miss Fisher was being stored in the property room of the Metro Nashville Police Department.

17. On 10-19-2011, the Davidson County Criminal Court entered an order granting testing for DNA specimens, and an additional subpoena duce tecum was enter as to the production of the Rape kit..

18. Based upon this information, plaintiff's attorney along with his investigator went to the property and evidence storage room of the Nashville Police Department. Upon reviewing a property room logbook discovered that in mid-May of 1978, defendant David L. Raybin, acting in his official capacity of assistant district attorney general had taken physical possession of the sexual assault kit used to collect evidence in the alleged sexual assault of Miss Fisher. But, the kit had never been returned to the property and evidence storage room of the Nashville Police Department.

19. Pursuant to this court order, attorneys went to the property and evidence storage room of the Nashville Police Department in search of the sexual assault kit, but could not locate it , nor could they ascertain any record that the State had destroyed the evidence.

Arthur L. Armstrong v. David L. Raybin, et.al.

5
Case 3:14-cv-01744   Document 1   Filed 08/25/14   Page 5 of 17 PageID #: 5

## NATURE OF THIS ACTION

1. Plaintiff seeks Declaration that the action of the defendant in conspiring for the purpose to impede due course of Justice by way of denying plaintiff's access to the *Court Ordered Testing* of the material evidence gathered and collected from the victim's evidence rape kit on the day of the crime, February 12, 1977 in which Arthur L. Armstrong stands convicted. The defendant knew or should have known that the on-going litigation in this case required preservation of 'any biological specimen extracted from the evidence gathered in this case to include but not limited to semen, saliva, hair, and/or other forensic evidence collected in which 'Deoxyribonucleic Acid' (D.N.A.) would be available for analysis.

2. In destroying and/or losing the evidence collected from the rape kit, the State and/or it's agents have denied Mr. Armstrong due process of law, reasonable access to the courts, to defend against the malicious and vindictive allegations alleged against him. The defendant David Raybin acted in bad faith in failing to return the evidence, so that it could be preserved, and by refusing to, or neglecting to prevent such deprivation and denials to the plaintiff.

3. In mid-May of 1978, the property room ledger demonstrates that David L. Raybin, the then-assistant attorney general for Davidson County, Tennessee signed for the release of the rape kit evidence related to Miss Fisher.

4. The property room ledger further demonstrates that David L. Raybin, the then-assistant attorney general for Davidson County, Tennessee never returned the rape kit evidence to the property and evidence storage room of the Nashville Police Department as was established protocol.

5. Mr. Armstrong declares that David L. Raybin, the then-assistant attorney general for Davidson County, Tennessee failed to follow the established protocol for handling and preserving evidence that was detained in the course of an investigation and all physical evidence that was determinative of the outcome of the case.

6. Mr. Armstrong is informed and believes, and based upon such information and belief, alleges that the defendant acted in bad faith in failing to preserve the rape kit evidence, and for intentionally failing to return the rape kit to the property and evidence storage room of the Nashville Police Department because he knew it contained exculpatory evidence that would have exonerated the plaintiff.

7. Mr. Armstrong seeks a declaratory order against David L. Raybin for conspiring for the purposes to deny and hinder due course of justice, with the intent to deny Mr. Armstrong equal protection of the law.

8. And that, defendant Raybin's acts or omissions constituted a violation of Mr. Armstrong's constitutionally protected rights under the First, Fourth, Fifth, Sixth, and Fourteenth Amendments of the United States Constitution.

9. The State of Tennessee by and through the intentional acts and omissions of the defendant, David L. Raybin has failed to follow established protocol for the handing and preservation of "all" rape kits and related laboratory tests and the results thereof.

10. Mr. Armstrong is informed and believes, and based upon such information and belief, alleges that, but for the defendant's acts of bad faith in failing to preserve the rape kit evidence, and for intentionally failing to return the rape kit to the property and evidence storage room of the Nashville Police Department.

Arthur L. Armstrong v. David L. Raybin, et.al.

7
Case 3:14-cv-01744   Document 1   Filed 08/25/14   Page 7 of 17 PageID #: 7

11. The former assistant attorney general David Raybin refuse to return the evidence contained in the results of the rape kit in a calculated effort to circumvent the due process in Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed 2d 215 and it's Progeny.

## STATEMENT OF FACTS

12. In mid-May of 1978, then-assistant attorney general David Louis Raybin signed for the receipt of the rape kit evidence from the property and evidence storage room of the Nashville Police Department related to the alleged victim, Miss Shellie O. Fisher.

13. On 10-19-2011 An Order was issued for subpoena duce tecum relating to the production of the medical records for Shellie O. Fisher, medical rec. #17-16-94.

14. On 11-02-2011, Ms. Bonnie Paugh, Director of Health Information Management gave sworn affidavit as custodian of Medical Records that case number #17-16-94, Patient Ms. Shellie O. Fisher cannot be found after a thorough search, no such described records on the subject patient cannot be found.

15. On 11-3-2011 Sandy Myers a registered nurse who coordinated the sexual assault program provided affidavit stating that after her searching hospital records, she could not find 'any record whatsoever' of a rape kit related to Ms. Shellie O. Fisher in their forensic exam holding areas dating from February 12, 1977. And that they have no access to any rape kit, record of any rape kit, or any other physical evidence of Ms. Shellie O. Fisher.

16. Because of the unethical acts of the former prosecutor and investigating officers with respect to the undisclosed reports of the State's 'star witness' the Petitioner has established a clear *Brady* violation because of the State's failure to disclose evidence

of an impeaching witness' purported inability to identify her assailant. *See: Ferguson v. Dormire,* 413 S.W. 3d. 40 (2013).

17. At trial, the alleged victim's identification of her assailants was the crux of the State's case in chief. These statements coupled with any findings from the 'rape kit' examination and its related report would have placed this case in a different light and would have exonerated Mr. Armstrong.

18. THE STATE knew or should have known the material value of the lost an/or destroyed evidence contained within 'rape kit's report after it's collection. The value of these results was apparent before it's destruction or lost.

19. These reports withheld by the State of Tennessee denied Mr. Armstrong his fundamental right of due process. After further investigation it was learned that David L. Raybin, acting in his capacity as the assistant attorney general had signed for the receipt of the rape kit and removed the evidence from the Nashville Davidson County Police Department's evidence room in mid-May of 1978. And failed to 'ever return' it according the log books at the Nashville, Davidson County Police Department evidence property room log books.

20. After filing numerous appeals, and being granted discovery and disclosure in several petitions. The State of Tennessee was on notice that plaintiff was seeking as early as 1993, following the decision in *Freeman v. Jeffcoat* thus allowing defendant access to the testing of forensic evidence/results and **DNA** analysis of the alleged victim's 'rape kit' collected on *February 12, 1977*.

21. The State of Tennessee an/or it's agents knew or should have known that plaintiff/defendant Armstrong has steadfastly maintained his actual innocence and

appealed his unlawful conviction, and has sought access to the evidence collected on February 12, 1977.

22. In this instance, the then-assistant district attorney general, David L. Raybin in a calculated effort to circumvent the due process requirement of disclosure in *Brady v. Maryland*, he refused/failed to follow the *curriculum vatae* when he did sign out in mid-May of 1978 evidence from the evidence/property room of the Nashville Police Dept. evidence room and once he finished examining and logging the evidence Prosecutor David L. Raybin and/or it's agents for the prosecution failed to return this vital and essential evidence back to the Nashville Police Department evidence room as evident from the logs books/files dated from when it was signed out to this present date. The State of Tennessee and or/it agents were in direct violation of standard operating procedures (SOP). These acts have wherein the State has failed to preserve this vital evidence has denied and deprived plaintiff of his right to equal protection under the constitutional.

23. In failing to preserve the forensic evidence sample an/or 'rape kit' the State of Tennessee authorities acted in 'bad faith', and not in accord with their normal practice, wherein a case is still active. The evidence in the rape kit possessed an exculpatory value that was apparent 'before' it was destroyed, and was valued at such a nature that plaintiff would be unable to obtain *'comparable evidence"* by other reasonable means.

24. Due process demands simply that where the State of Tennessee collects evidence, as it is procedure to preserve the evidence or it's equivalent for the use of the defendant. The State of Tennessee an/or it's agents had custody, care, and total

control of the evidence collected in the 'rape kit' taken from the alleged victim Shellie O. Fisher on February 12, 1977.

25. The record contains repeated allegations of official animus and prosecutorial misconduct on the part of the former assistant district attorney, David L. Raybin, the State of Tennessee and several witnesses. The record also unveiled a conscious effort by the State of Tennessee an/or it's agents to withhold and suppress exculpatory evidence in the State's case in chief.

26. The forensic evidence collected from the 'rape kit' was the most probative evidence available to the defense of the plaintiff/defendant Arthur L. Armstrong, who was actually innocent of the charges lodged against him.

> **Note**: The withheld medical reports contained several relevant quotes from the alleged victim, such as; "I NEVER SAW THE MEN", and also, another statement found in the withheld medical report was; "I NEVER SAW THEIR FACES."

27. Due process is also implemented when the State and or/or its agents intentionally destroys evidence that might have proved favorable to a criminal defendant.

28. This evidence was material because of the exculpatory nature of the test results excluding the plaintiff/defendant Armstrong as being a donor of the secretion(s) and would have played a 'significant role' in his defense.

> Both prongs of the materiality standard established in *California v Trombetta*, 467 U.S. 479, 104 S.Ct 2528, 81 L.Ed 2d. 413 (1984) are met in this instance, as well as the State and/or it's agents acted in bad faith.

Arthur L. Armstrong v. David L. Raybin, et.al.

11

Case 3:14-cv-01744   Document 1   Filed 08/25/14   Page 11 of 17 PageID #: 11

29. The value of the testing of the rape-kit evidence, and the results from that testing possessed an *'exculpatory value' that was apparent 'before the evidence was destroyed by the State of Tennessee an/or it's agents.*

30. In the case at bar, the results would have exonerated Mr. Armstrong. It's destruction has left Mr. Armstrong unable to obtain comparable evidence by other reasonably available means. *See: Trombetta,* 104 S.Ct. at 2534.

31. Mr. Armstrong is informed and believes, and based upon such information and belief, alleges that then-assistant attorney general David Louis Raybin conspired with investigator detectives Donzaleigh Heard and Diane Vaugh, along with the medical examiner, by knowing withholding the alleged victim's exculpatory statements related to her inability to identify anyone, as well as the medical reports, record, and files containing the same exculpatory information, which was provided by the alleged victim immediately after her assault and also during subsequent interviews conducted two weeks later via telephone. These 'statements' contradicted the results of the photo array shown to the victim some nine months later, and also cast doubt on her ability to make a reliable in-court identification of Mr. Armstrong at trial.

32. THE STATE and/or it's agents showed bad faith by knowingly not revealing to the defense the results of 'any' tested DNA evidence from the alleged victim's rape kit

33. The applicability of the bad-faith requirement in Arizona v. Youngblood 488 U.S. 51, 109 S.Ct. 333 102 L.Ed. 2d. 281 (1988) depended not on the centrality of the contested evidence to the prosecutor's case or the defendant's defense, but on the distinction between "material exculpatory evidence" and potentially useful "evidence.

Arthur L. Armstrong v. David L. Raybin, et.al.

12
Case 3:14-cv-01744   Document 1   Filed 08/25/14   Page 12 of 17 PageID #: 12

34. At trial, the alleged victim's identification of her assailants was the crux of the State's case in chief. These statements coupled with any finding from the 'rape kit' examination and it's related report would have place this case in a different light and would have exonerated Mr. Armstrong.

35. These acts by the State of Tennessee and its agents constitute s denial of due process of law. The Plaintiff/defendant rights were violated.

36. The probability does exists that the plaintiff would not have been prosecuted and/or convicted had the former prosecutor David L. Raybin made it known to the defense the results from the human biological evidence resulting from the 'rape kit' evidence of the alleged victim, Ms. Shellie O. Fisher.

37. Plaintiff is not challenging the validity of his conviction through this action, however, the loss or destruction of evidence is nonetheless so critical to the defense as to make a criminal trial fundamentally unfair, as done in this instance.

38. Fairness dictates that when a person's liberty is at stake, the sole fact of whether that police or another state official acted in good or bad faith in failing to preserve evidence cannot be determinative of whether the criminal defendant received due process of law. "State v. Morales, 232 Conn. 707, 723, 657 A.2d 585, 593 (1995).

## THE ISSUES FOR REVIEW

(a) Did the State of Tennessee by and through the actions of former assistant attorney general David L. Raybin have a duty to preserve the 'rape kit' evidence.

(b) Did former prosecutor David Raybin, intentionally failed to return the 'rape kit' evidence after criminal proceeding had concluded against the plaintiff.

**(c)** That David Raybin, failed to follow standard protocol and that his actions caused the rape kit evidence to be misplaced and/or destroyed so that it would not be available for further testing, and other legal proceedings.

**(d)** That former assistant attorney general David Raybin, suborned perjury from several testifying witnesses including, but not limited to Ms. Fisher, Detective Heard and other evidence offered

**(e)** Was other evidence offered sufficient to support any conviction for the charges lodged.

**(f)** When was the test performed on the evidence, and <u>what were the results of the examination conducted on the evidence</u> received from the alleged victim.

**(g)** Why wasn't the defense made aware of the testing and the results of such test.

## RELIEF SOUGHT

WHEREFORE, premise considered, the plaintiff to pray the following relief;

(a). That this Honorable Court allows Plaintiff to proceed in this cause as an indigent person, without prepayment of cost or fees, or give security thereof.

(b). That this Honorable Court issue an Order/Summons, directing the defendant(s) to respond, defend, answer or otherwise plea to the factual allegations as contained herein above.

(c). That this Honorable Court allow plaintiff to amend, revise, modify or supplement the present Civil Rights Complaint, upon further consultation with counsel, or upon propria persona pleadings, and/or when justice so requires.

Arthur L. Armstrong v. David L. Raybin, et.al.

14
Case 3:14-cv-01744   Document 1   Filed 08/25/14   Page 14 of 17 PageID #: 14

(d).  That this Honorable Court find that the defendant David Raybin failed to follow the standard protocol for handling and transfer of the rape kit evidence to the laboratory and all of the laboratory test results.

(f).  That this Honorable Court find that the defendant David Raybin has engaged in activities of a criminal nature, finding him liable to the Plaintiff for the injuries suffered from his unlawful incarceration

(g).  That this Honorable Court would allow the plaintiff/defendant released on his own recognizance, pending the disposition on the case.

### RELIEF REQUESTED

WHEREAS, PLAINTIFF requests that the Court grant the following the relief;

**A.** Issue a declaratory judgment stating that:

1. The wrongful conviction of the plaintiff by defendant Raybin's acts an/or actions violated the plaintiff's rights under the Fourteenth amendments of the United States and constitutes a violation of state law.

2. Defendant Raybin's action in conducting the plaintiff malicious prosecution and acting to sustain it by 'losing' exculpatory evidence violated the plaintiff's rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

3. That the results of any testing of the evidence be made available to the plaintiff.

**B.** Issue an injunction ordering the defendants an/or their agents to:

1. Mandating the U.S. Marshal's Service to conduct a thorough inventory of all evidence, bins, lockers, property rooms and warehouses used by the following entities, (1) Nashville Police Department, (2) Metro Davidson County Police Department (3) Tennessee State Police Crime Lab (4) TBI Crime Lab (5) District Attorney's Office (6) Laboratory used NPD/MDPD, (5) Law offices of David L. Raybin.

2. Immediately arrange for the plaintiff to be tested against the evidence provided from the 'rape kit evidence., If' and when it's found".'

3. Provide the results from any prior testing that was performed on the evidence from the rape kit as a result of the aforementioned actions of the former Assistant Attorney General David L. Raybin after he checked the evidence out of the property room in May 1978.

4. Issue an order for plaintiff's immediate release from this wrongful conviction.

5. Appoint Legal Counsel to further represent this Plaintiff.

C. Award compensatory damages in the following amounts:

$500,000.00 (five-hundred thousand dollars);

D. Award punitive damages in the following amounts:

$1,000,000.00 (one million dollars).

E. Grant each other relief as it may appear that plaintiff is entitled:

Respectfully Submitted:

*[signature: Arthur L. Armstrong]*
ARTHUR L. ARMSTRONG
Tenn. Dep't Corr., registration number: 84031
Northwest Correctional Complex
960-State Rt. 212
Tiptonville, Tennessee 38079

# VERIFICATION

I the undersigned, Arthur L. Armstrong, do hereby declare and verify with my signature below that I am the above named Petitioner, as named in the caption of this Petition for Declaratory Order. Further, verifying the contents as contained therein are true and exact to the best of my knowledge.

Signed this the 21st day of August 2014

*Arthur L. Armstrong*
ARTHUR L. ARMSTRONG
Tenn. Dep't Corr., registration number: 84031
Northwest Correctional Complex
960-State Rt. 212
Tiptonville, Tennessee 38079